HITCHNER WALL PAPER CO. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. February 10, 1909.)

No. 33.

1. EVIDENCE (§ 539½*)—OPINION EVIDENCE—SPECIAL KNOWLEDGE AS TO SUBJECT-MATTER.

A question to a witness, testifying as an expert locomotive builder, as to how far a spark, going through a spark arrester, such as was used on defendant's railroad engines, would carry on a windy day and be capable of setting fire to inflammable material, was not one relating to the knowledge of such witness as an expert, and its exclusion was not error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2350–2352; Dec. Dig. § 539½.*]

2. RAILROADS (§ 481*)—FIRES—EVIDENCE—ADMISSIBILITY—RELEVANCY TO ISSUES.

On the trial of an action against a railroad company to recover damages resulting from a fire alleged to have been caused by sparks from an engine, a statement, volunteered by a witness, that engineers some-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

times punched holes in the spark arresters, was properly stricken out as irrelevant and improper, where there was no evidence or claim of its having been done on defendant's road.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 481.*]

3. WITNESSES (§ 268*)—CROSS-EXAMINATION—SCOPE.

Where, in an action against a railroad company to recover for damage to plaintiff's factory, alleged to have been caused by sparks from an engine on defendant's road, plaintiff had introduced the testimony of a number of witnesses, including its manager, to the effect that no smoking was permitted or had ever occurred in the building to the knowledge of the witnesses, it was within the scope of legitimate cross-examination to show by such manager that a fire had occurred in the building within a year, which was reported to him as having been caused by a lighted cigarette, where such was the fact.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 935–936; Dec. Dig. § 268.*]

4. RAILROADS (§ 485*)—FIRES—ACTION FOR INJURY BY FIRE—INSTRUCTIONS.

In an action to recover for damage from fire alleged to have been caused by sparks from an engine on defendant's railroad, where there was evidence that sparks might escape from an engine properly equipped and without negligence on the part of those in charge, it was not error to instruct the jury that in that connection they might consider evidence of the exposed condition of plaintiff's property, although contributory negligence was not an issue.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 485.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 158 Fed. 1011.

Alexander Simpson, Jr., for plaintiff in error.
John Hampton Barnes, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. The Hitchner Wall Paper Company, the plaintiff below and plaintiff in error, conducted a wall paper factory at Holmesburg, in the state of Pennsylvania. The factory building, of which the plaintiff was lessee, was a two-story and basement brick building, situate immediately west and alongside of the New York Division of the defendant company, its front running for about 200 feet parallel with the railroad and about 41 feet from the west rail of the west track thereof. Sometime in the forenoon of May 5, 1906, a fire occurred in said factory, which destroyed a large quantity of the paper, paper material and machinery of the plaintiff. In the suit thereafter brought in the court below, plaintiff claimed that the fire was caused by a spark or sparks from an unidentified locomotive engine passing the plaintiff's factory, and that such sparks were emitted and escaped from said locomotive, by reason of the defective condition in which the spark arresters of its locomotives were allowed to remain by the defendant, and by reason of the unskillfulness and want of care with which they were managed by those in charge of them, and that the most approved spark arresters in general use were not used on said locomotives.

At the trial, plaintiff was not able to prove by direct testimony that

a spark from any locomotive engine of the defendant had occasioned the fire. It was allowed to prove, however, a great number of independent circumstances, from which it is claimed that the jury could infer, both that the fire was so occasioned, and that it was due to the negligence of defendant, either in not providing suitable spark arresters, or in not maintaining them in such repair as to prevent the emission of sparks capable of setting fire to the inflammable material upon which they might alight. The scope permitted to this testimony by the court below went to the verge of what was allowable in such cases, and there seems to be no adverse criticism by the plaintiff in error as to the general action of the court in this respect, objection being confined to the special grounds upon which particular offers of testimony were rejected by the court. In the absence of direct testimony to that end, therefore, plaintiff undertook to satisfy the jury, by a process of exclusion, that nothing else than a spark from defendant's locomotives could have caused the fire. Testimony was offered and admitted, tending to show that other fires in the vicinity had been caused in this way, within a short time prior to the burning of the factory, and negative testimony was admitted to eliminate (with what success was a question for the jury), one after another, all the possible causes for the fire except the sparks from the defendant's locomotives. The theory upon which the case was tried by the plaintiff, was, that a spark from a locomotive entered the cellar or basement door opening on a level with the roadbed, and fell into a bin just inside the door, into which waste paper was dropped from the floor above. The verdict and judgment were in favor of defendant.

There are ten assignments of error, referring to the admission or rejection of testimony and to certain portions of the charge of the court to the jury. The questions raised by these assignments, however, as pressed at the trial, are few in number. The first of these to be noticed, relates to the refusal of the court to allow a so-called expert to testify how far, in his opinion, a spark would go on a windy day. This witness was the proprietor of a machine shop, and in 1880 was an apprentice in the Baldwin Locomotive Works, where he continued until 1894. Several years of this time, he was out upon railroads in different parts of the country, testing engines and carrying on experimental work. He had helped build locomotives for the Pennsylvania Railroad, and was familiar with the type of engines used on that road, but he had ridden only once on a Pennsylvania engine, from Jersey City to a roundhouse, and, as the court below said, had not been in touch with engines upon that road for 13 years. He was admitted as an expert by the court and testified at great length as such. He had observed sparks thrown from engines of the Pennsylvania Railroad at night, when there was no unusual wind, and was permitted to say, over objection, that under normal conditions sparks "that have passed through a 2½ mesh, I presume would go about 15 feet above the locomotive," but that they would not set fire to anything. He was also permitted to say, over objection, from general observation, that such sparks die before they reach the ground, when they come through such a mesh as was used on the Pennsylvania Railroad. Then the question was put to him by plaintiff's counsel:

"How far, if you can tell me, would a spark on a windy day, going through the mesh of the arrester used on the Pennsylvania Railroad, carry and be capable of setting fire to paper or other objects of that character?"

The objection to this question was sustained by the court, and exception noted for plaintiff. The assignment of error based upon this exception was strongly pressed at the bar by counsel for the appellant.

We think the testimony offered by this question was clearly objectionable, and was properly ruled out by the trial judge. The qualifications of an expert witness, and the limitations to his testimony, are wholly within the sound judicial discretion of the trial judge. This witness had been admitted as an expert, in regard to the construction and operation of locomotive engines, and a sufficiently wide scope had been given to his testimony. He had given important testimony as to how far a spark would rise under normal conditions through a standard spark arrester, and also testified that a spark so emitted under such conditions would not carry, so as to set fire to inflammable material, such as paper, on the side of the road; but the question as to how far a spark would carry on a windy day clearly did not relate to his knowledge as an expert locomotive builder, and as a matter of ordinary observation, the elements of the strength and character of the wind were too uncertain to make his opinion of use in determining any issue in the case.

The next question arises out of the assignment of error to the order of the court, striking out a volunteered statement of this expert witness, that engineers would sometimes, when the engines steam badly, punch holes in the spark arrester themselves, to make up steam. The witness had no knowledge of this being done upon the engines of the defendant company, and it was clearly irrelevant and improper, in the absence of such knowledge, to suggest to the jury that this was done, or might have been done, to the engines on the defendant's road passing the plaintiff's factory at the time of the fire.

The third matter to be considered relates to a question asked Frank G. Hitchner, the general manager of the plaintiff company and owner of two-thirds of its stock, in the course of his cross-examination by defendant's counsel. The theory upon which the case of the plaintiff was tried, as we have already said, was that a spark emitted from an unidentified locomotive of the defendant company, passing the plaintiff's factory, was carried by the wind through the open cellar door of the factory and into the bin of waste paper situated nearby, and the method of proof, by exclusion, above referred to, made necessary the testimony of many witnesses, including Hitchner himself, of a negative character, as to the absence of any conditions in the building itself from which the fire could have originated. Prior to calling Hitchner, the plaintiff called a number of witnesses, who testified that no smoking was permitted or had ever, within their knowledge, occurred in the building; that notices were posted in the factory, forbidding smoking. The general superintendent testified, on direct examination, that this rule against smoking was rigidly enforced, and, on cross-examination, was asked and testified, as follows:

"Q. What do you mean by saying that the rule against smoking was rigidly enforced? What punishment did you inflict? A. Discharge. Q. When had

there been a report made to you of the breach of that rule, before the fire? A. I never had any report of anybody smoking."

Hitchner had testified to the same general effect, and also, that he had filed proofs of loss with the insurance company, stating that the cause of the fire was unknown, and, on cross-examination, he testified, without objection, as follows:

"Q. You knew, or at least your witnesses have so testified, that there was no smoking in that building? A. Yes. Q. Did you attribute the fire to smoking when you first heard of it? A. No, sir. Q. Did you attribute it to fire communicated from the boilers? A. That was the general supposition, the very first thing. Q. That was the general supposition. And for how long did that supposition prevail? A. On the day of the fire. Q. Did it prevail on the day of the fire? A. Yes. Q. And how did you remove that supposition from your mind before you brought this suit? A. I did not say that it was my supposition. It was a general supposition. Q. What led you to make that supposition? A. Talk among some of the people."

After questioning further on this line, he was asked, on further cross-examination, as follows:

"Q. As a matter of fact, was not there a fire in your building within a year prior to this time, which was reported to you to have been caused by a lighted cigarette? (Objected to. Objection overruled, and exception noted.) A. Yes, sir. * * * Q. Where did that fire start? A. Down in the same place. Q. In the waste bin? A. Yes."

After some further questions, counsel for plaintiff moved to strike out this evidence, on the ground that plaintiff's witnesses were limited in their testimony to fires that occurred within six months of the one in question. The motion was overruled by the court, and exception taken and noted for plaintiff. The principal objection, however, urged before this court, has been that this came within the rule prohibiting hearsay testimony. Passing the suggestion, that this ground of objection was not stated to the court below, we come to its merits. The question is a close one, but the better opinion seems to be that, in view of what had preceded, the question objected to did not transcend the legitimate scope of cross-examination. It is to be observed that the gist of the testimony given by plaintiff's witnesses on this point, was negative in character; that they had no knowledge of any one smoking on the premises, and that the rule against smoking was strictly enforced, and yet Hitchner had testified, without objection, on cross-examination, that at the time of the fire in question, the supposition, not of himself but of others, "the talk" of others, presumably of those in his own employ at the time it occurred, was that the fire had been caused by boilers in the factory, and that this was "the general supposition, the first thing." The question objected to was, whether a former fire in the same place had not been attributed to a lighted cigarette. In both cases, this attribution of the fire—in the one case to the boilers and in the other to a lighted cigarette—by those present at the time and interested therein, was not far removed from being part of the res gestæ. But, in the light of the testimony of both Hitchner and Compton, and other witnesses, that the rule against smoking was efficiently enforced, the question was pertinent, as directed to the value of the testimony in respect to the exclusion of smoking and all other causes

of fire, save in connection with sparks from defendant's locomotives. To this end, it was a legitimate probing as to the value of Hitchner's opinion in this respect. It was not seeking to introduce evidence tending to prove, either that the former fire originated from the boilers and the fire in question from a lighted cigarette, but the attribution on both occasions of the fire to such a cause, was an ultimate fact properly inquired about on cross-examination, in the discretion of the trial judge. We do not think that the wide discretion exercised by the court below in this matter has been abused, and the assignment of error in this regard is therefore overruled.

For the rest, after a careful reading of the charge of the learned trial judge, we are of opinion that all the main questions in the case were impartially, clearly, and fully submitted to the jury, and with great fairness to the plaintiff. While the questions as to what caused the fire, and whether defendant was guilty of negligence in not equipping its locomotives with approved spark arresters, or in not keeping such in repair, or subjecting them to proper inspection, were submitted for determination by the jury, all question as to contributory negligence on the part of the plaintiff, in leaving the inflammable material of waste paper so near an open door and but a short distance from the tracks of the defendant's road, was properly withdrawn from the consideration of the jury.

Only one other point raised by the plaintiff requires our attention. The plaintiff complains, in the ninth assignment of error, that the court instructed the jury, as requested by the defendant, as follows:

"In ascertaining the cause of the fire, the jury may, under the evidence that sparks may be emitted from locomotives without negligence of the defendant, consider the evidence of the way in which the plaintiff used its property, and particularly the evidence of the cellar door having been open just prior to the fire, and of the existence of the waste in and about the bin, and baling press near the door at the point where the fire is said to have started."

We see no objection to this statement. Undoubtedly, the jury, under the evidence, were required to consider whether the fire could have been caused by a spark emitted from a locomotive equipped with a proper spark arrester. In doing so, it seems entirely reasonable that they should consider the fact that this inflammable material of waste paper was stored near the open door in the side of the building, within a few feet of the tracks of the defendant company. Owing to such a condition, a fire might have been caused by a spark thus emitted, which, under other conditions, would have been impossible. The evidence certainly did not exclude the possibility of a fire under such circumstances from sparks emitted from a properly equipped locomotive, and the court was clearly right in instructing the jury, by its general charge, as to the measure of care and vigilance which the law imposes upon a railway company, and in saying that, if it has placed on its locomotives the most approved spark arresters, and keeps them in good repair, it cannot be held responsible for the emission of sparks which they cannot prevent.

In what we have said, we have covered the principal points urged at the bar by counsel for the plaintiff in error. As to the other assign-

ments of error, we content ourselves with saying that they do not commend themselves to our judgment, and do not require specific discussion.

The judgment of the court below is therefore affirmed.