ECLIPSE LUMBER COMPANY et al., Appellees, v. J. C. DAVIS, Appellant.

**NEGLIGENCE:** Proximate Cause—Blockading Street. It may not, of course, be said that the negligent blockading of a public street

by a railway company was the proximate cause of the destruction
of property by fire because it compelled the fire engines to detour
in order to reach the fire, when the testimony leaves the issue
speculative and conjectural.

**EVIDENCE:** Opinion Evidence—Ultimate Jury Question. An expert
2    witness may not, in an action based on negligence, testify to an
opinion which is the identical question on which the jury must pass.
So held where the witness was permitted to testify that a fire could
have been extinguished by a fire engine, had the engine not been
impeded by an obstruction in reaching the fire.

*Appeal from Jefferson District Court.*—C. W. VERMILION, Judge.

OCTOBER 16, 1923.
REHEARING DENIED JANUARY 18, 1924.

ACTION to recover damages because of alleged negligence
on the part of the employees of a railroad company in blocking
a public street and thus compelling the city fire truck that was
going to a fire, to make a detour. A verdict was returned for
the plaintiffs, and judgment entered thereon, and the defend-
ant appeals.—*Reversed.*

*W. D. Eaton, Simmons & Ross,* and *McNett & McNett,* for
appellant.

*Thoma & Thoma, Nathan H. Chase, Harvey O. Sargeant,*
and *Bates, Hicks & Folonie,* for appellees.

FAVILLE, J.—On the evening of December 12, 1919, the
buildings and entire stock of lumber of the Eclipse Lumber
Company, located in Fairfield, Iowa, were destroyed by fire.
Certain insurance companies who are appellees have been sub-
rogated, to the extent of the loss paid by them on policies of
insurance on said property.

Stated as briefly as may be, it is appellees' contention that
the employees of the railroad company, represented in this
action by the director general of railroads, negligently caused
1. NEGLIGENCE:. a street in said town to be blocked by a car, thus
proximate
cause: blockad- preventing the city fire truck from reaching the
ing street. fire in question expeditiously and promptly, and

that because of such delay the property of the lumber company was totally destroyed.

The following plat will help to an understanding of the situation in the case:

It will be observed that North Fourth Street extends north and south in the city of Fairfield, and that it is crossed at nearly right angles by six tracks belonging to the railroad company. The lumberyard of the Eclipse Lumber Company was located on the east side of North Fourth Street, north of the railroad tracks, and between the right of way and West Lowe Street. South Depot Street is parallel with the right of way, and on the south side thereof. The location of the fire station is not shown on the plat, but it appears from the evidence that it was located in a southerly direction from South Depot Street, and six blocks distant therefrom. It is appellees' contention that the fire truck was proceeding northward on North Fourth Street to the fire, when its passage was blocked by one of the cars of the railroad company that was on the track across said street, and that because of such obstruction the fire truck was compelled to detour east on South Depot Street to North Third Street, and thence north two blocks on North Third Street to West Kirkwood Street, and thence south on North Fourth Street to the place of the fire.

It is the contention of the appellant that the train in question passed entirely across North Fourth Street to the west; that thereafter, a switching movement was attempted; and that one car failed to couple properly, and "drifted" on the street crossing, and was located there when the fire truck arrived.

The employees in charge of the train denied any knowledge of where the fire station was located, or from which direction the fire truck would come to the fire, although they knew where the fire was located.

The record in the case is very voluminous,—some 84 witnesses having been examined,—and it is utterly impossible, within the reasonable limits of an opinion, to attempt to review the conflicting evidence in the case. We can, at best, but summarize.

I. We first consider the contention of appellant that the blocking of the street by the railroad company was not the proximate cause of the injury complained of, and in connection therewith, the kindred proposition that the damages sought to be recovered are remote, speculative, and conjectural. To sustain their contention that the blocking of the street was the

proximate cause of the loss of the property, it was essential that appellees establish by a preponderance of the evidence their claim that, but for said blocking of the street, the fire truck would have reached the fire in time for the firemen to have extinguished it, and that the fire would have been extinguished without great loss. Estimates were placed by different witnesses upon the length of time required by the fire truck to make the detour, the evidence varying from approximately one minute, twenty-four seconds, to five minutes in time.

The fire truck was equipped with a chemical extinguisher, as well as with ordinary fire hose for the throwing of water. There is evidence in the record that it was the original intention of the fire company to couple the hose on what is known in the record as the ''Swain hydrant,'' near the northeast corner of the junction of North Fourth Street and West Grimes Street, and, after the coupling was made, to carry the hose, as it unwound from the truck, across the tracks of the railroad company to the fire. This plan was immediately abandoned when the street was found to be blocked, and after the detour was made, the hose was coupled to the hydrant known as the ''Jerico hydrant,'' near the northwest corner of the intersection of North Fourth Street and West Kirkwood Street. After the coupling had been made to this hydrant, the hose was carried to the fire, and an attempt was made to extinguish it with water. Within two or three minutes thereafter, the hose broke, and it was necessary to take the fire truck back to the fire station, to obtain new hose; and when it returned, the fire had made such progress that it was impossible to get it under control, and no attempt was made thereafter to save the property.

The fire was discovered near seven o'clock in the evening. The witness who discovered it describes the fire as at that time being in the office of the lumber company, and ''eating through the ceiling up above the chimney about a foot and a half square, and about a foot and a half southeast from the chimney.'' This witness went south on North Fourth Street to the Fulton restaurant, which is located near the alley in Block 5, south of South Depot Street, and told Fulton of the fire he had discovered. Fulton called the telephone office, and was informed by the telephone operator that she could not put in a fire alarm unless she

was given the name of the lumberyard which was on fire.
Thereupon, the witness Hall left the restaurant and ran back to
the lumberyard, to find the name; and when he returned to the
restaurant, Fulton was still at the telephone, and informed the
operator that the lumberyard on fire was on North Fourth Street,
"just across the 'Q' tracks." In the meantime, a number of
other people had gathered about the lumber office. One Gilley,
who lived near the alley in Block 18, north of West Lowe Street,
saw the fire also, and called up the telephone office, and informed
the operator that the lumberyard was on fire. He also was in-
formed that he must give the name of the lumberyard that was
on fire. The alarm was eventually turned in, and the truck
started for the fire. How much time was occupied between the
time the fire was first discovered and the time when the alarm
was given and the fire truck arrived at South Depot Street, is
a matter of great diversity in the testimony. One witness places
it at 25 minutes. Other witnesses make the interval much less.
Some of appellees' witnesses estimate the total time consumed
after the discovery of the fire until the fire truck reached the rail-
road track as approximately six minutes. The important thing
in this connection was to establish, if possible, the condition in
which the fire was at the time the fire truck would have arrived
at the scene of the conflagration in the event that there had been
no obstruction of the street. The evidence on this question is
gathered from a great number of witnesses, who endeavored to
describe the progress that the fire had made at or about the time
it is assumed that the fire truck would have arrived at the lum-
beryard if it had been unimpeded. This testimony is incapable
of reconciliation. The appellant contends that the evidence
establishes that the fire had made such progress that it would
have been impossible for the fire company to have extinguished
it, had the fire truck arrived promptly. Various witnesses, in
different positions to see the fire, testified regarding their obser-
vations respecting the progress the fire had made before the
truck arrived at the railroad or at the fire. The great difficulty
lies in attempting to connect the testimony of these witnesses,
exactly or approximately, with the point of time when the fire
truck would have arrived at the lumberyard, but for the obstruc-
tion. Some of the witnesses contend that the fire spread rapidly,

and that, before the fire truck arrived at South Depot Street, the fire had eaten its way out of the office building and into the adjacent lumberyard, and that the flames were leaping high in the air. Others contend that the fire at that time occupied a comparatively small space within the office building.

It is perfectly obvious that the question of a very brief time at this crucial period is of vast importance in this case. The appellees' contention is that the delay of the fire truck in making the detour in question was four or five minutes. Under their own theory, the fire was spreading so rapidly that, had the fire company arrived this brief space of time sooner than it did, it could have extinguished the fire, but, because of this delay, the fire, during that period of time, made such rapid progress that it was impossible to control or extinguish it. Appellant likewise contends that the fire progressed rapidly, its contention being that it had so progressed that the fire could not have been extinguished, had the fire truck proceeded directly to the fire.

Two difficult fact propositions are involved at this point. The first is the question of the progress of the fire at the time the fire truck would have arrived, if unimpeded. The other is the question as to the length of time lost by the detour, and whether or not, during such time, the fire progressed from an extinguishable to a nonextinguishable stage. Other queries naturally arise also. If the firemen had stopped to attach the hose at the "Swain hydrant," how much delay would have been caused in so doing? Could the fire have been extinguished by the chemical apparatus alone? If the hose had been attached to the Swain hydrant, and had been carried across the tracks to the fire, would it still have broken within a few minutes, and been rendered useless?

Appellees offered expert witnesses who expressed the opinion that, if the fire truck had not been delayed by the car, it would have arrived in time to have extinguished the fire by the use of the chemical apparatus. We will discuss this evidence later.

The question of proximate cause is one that has been before the courts so frequently that the decisions are literally innumerable. The doctrine is well established. The difficulty lies in applying the rule to the facts of any given case. In a general

way, it may be said that, to ascertain whether or not a thing complained of is the proximate cause of an injury, it is necessary to determine what was the thing amiss, either of omission or commission, without which the injury or loss would not have occurred. It has sometimes been called the "moving" cause or "producing" cause, or the "causing" cause. Authorities recognizing the rule regarding proximate cause are valuable only as indicating the holdings of the courts upon a state of facts that may be more or less analogous to the facts under consideration in a given case.

In *Dubuque Wood & Coal Assn. v. City of Dubuque*, 30 Iowa 176, speaking by Mr. Justice Beck, we said:

"The dividing line between proximate and remote damages is so indistinct, if not often quite invisible, that there is, on either side, a vast field of doubtful and disputed ground. In exploring this ground there is to be had but little aid from the light of adjudicated cases. The course followed in each case which is declared to be upon one side or the other of the dividing line is plainly marked out, but no undisputed landmarks are established by which the dividing line itself may be precisely traced."

In the cited case, it appeared that there was a bridge over a slough of the Mississippi River in the city of Dubuque, and a street from the business portion of the city to the levee upon the river; that the levee was liable to be overflowed by the river; and that the street upon which the bridge was located was the only way in which the plaintiff could secure wood that had been deposited upon the levee, for the purpose of delivering the same to its customers. It was claimed that the bridge became impassable through the negligence of the defendant, and that plaintiff was unable because thereof to remove its wood, and the same was lost by reason of a flood in the river. Damages were sought because thereof. We held that the negligence of the defendant in permitting the bridge to become impassable was not the proximate cause of the loss of plaintiff's wood so washed from the levee.

In *Bosch v. B. & M. R. R. Co.*, 44 Iowa 402, it appeared that plaintiffs were the owners of certain lots in the city of Burlington upon which they had buildings, and had access to the Mississippi River by city streets. It was claimed by plaintiff

that the defendant entered upon said streets and deposited earth thereon, and laid railroad tracks in said streets, and occupied the same as a car yard.  It was contended that plaintiff's buildings caught fire, and that, as the fire engine attempted to reach them, the street in question was incumbered by the defendant railroad in such a manner as to prevent the fire company from reaching said fire; and it was alleged that, but for such obstruction, the fire would have been extinguished.  A demurrer to the petition was sustained.  Recognizing the rule that one might be liable for cutting the hose or disabling the fire engine actually engaged in putting out a fire, and that damages would be the direct and proximate result of such act, we held that the building of the railroad tracks and the widening and filling in of the streets which prevented the fire engine from reaching plaintiff's property, were too remote to be made the basis of recovery.

In *Volquardsen v. Iowa Tel. Co.*, 148 Iowa 77, the plaintiff was a subscriber to the telephone service in the city of Davenport.  A fire occurred in his property, and the plaintiff attempted to notify the fire company by telephone.  He was delayed in so doing, and sued the telephone company for negligence in failing to properly respond to his call.  We considered the subject as to whether or not the delay in delivering the message was the proximate cause of injury to the plaintiff, and said:

"The fire was the primary cause of the loss.  The defendant did not start it, or have aught to do with its origin.  The charge against it is that the negligence intervened as the efficient cause in the omission to do that which would have resulted in the extinction of the fire.  Of course, if the failure to put out the fire was the direct and natural consequence of the unreasonable delay in making the connection, then there could be no doubt as to defendant's liability.  But several links in the chain of sequences are involved in doubt and speculation. * * * there could not have been a delay of more than ten or twelve minutes, and, when the firemen arrived, the fire was beyond control.  At what time must they have been on the ground to have saved the property?  No one can answer save from conjecture.  All realize that in such emergencies time is precious, but who can say from the situation as presented in this case how many minutes meant the loss of the plaintiff's property?  Suppose the connection at the central

office had been made promptly, would the fireman in charge of the fire station have responded promptly and promptly have rung the fire bell? Would the members of the department have heard and promptly have repaired to the scene? Was the apparatus for extinguishing the fire in working order and the water supply accessible and sufficient? Would all these intervening agencies have operated harmoniously and efficiently and with such promptness as to have put out the flames in time to have avoided a total loss? Manifestly, these are matters of speculation; and yet all this must be assumed if the loss is to be traced to defendant's negligence. Each of these independent agencies necessarily must be linked together in a line of causation, in order to connect it with the loss. * * * Moreover, how far the fire had spread at the time the firemen would have been likely to have reached the scene, had the connection been promptly made, is left by the evidence a matter of speculation merely. And then there are the weather conditions and the character of the material to be taken into account. After the experience of ages, fighting fire, even with modern machinery and apparatus, is precarious business, and uncertain in its results.''

We held that the situation differed from one in which a hose through which water is being poured on a fire is cut, and thereby the fire company actually engaged in extinguishing a fire is prevented from accomplishing its design. We reviewed a number of the cases where liability had attached, where there had been actual, direct interference, as the cutting of a hose in the work of the firemen who were extinguishing a fire.

In *Providence Wash. Ins. Co. v. Iowa Tel. Co.*, 172 Iowa 597, we again considered a case where action was brought against a telephone company for delay in reporting a fire. We held that the failure of the telephone company to promptly transmit the alarm was not the proximate cause of the injury complained of, and that the damages sought to be recovered were purely speculative.

The case of *Lebanon, L. & L. Tel. Co. v. Lanham Lbr. Co.*, 131 Ky. 718 (115 S. W. 824), is cited in the *Volquardsen* case. In this case, suit was brought against the telephone company for negligence in failing to make connection, so that the plaintiff could notify the fire company of the fire. The court said:

"As to the extent to which the fire would have spread before the fire department reached there if it had been promptly notified is a matter of pure conjecture, and the same may be said as to whether or not the fire department would have been able to subdue the flames and prevent the spread of the fire to the main buildings, if they had been promptly called. We know that fire fighting, under the most favorable circumstances, and with the most approved appliances and modern machinery, is an uncertain and frequently disastrous business. No two fires are alike, and it is indulging in the purest speculation to try to figure what would have been done under other conditions and different circumstances. Had the fire department been notified and arrived promptly, they might have reached the fire while it was still confined to the boiler house, and they might not; so they might have succeeded in confining it to that building and prevented its spread, and again they might not. The rapidity with which a fire may spread is controlled by no fixed law, but depends in a large measure upon circumstances,—the time of year, the material used in the building, and its contents, the force of the wind, and many other items, have to be reckoned with."

In *Hazel v. City of Owensboro,* 30 Ky. Law Rep. 627 (99 S. W. 315), the plaintiff sued the city on the claim that it had negligently permitted a street to become impassable, and that, when plaintiff's property caught fire, the fire engine was delayed by reason of the impassable condition of the street, so that plaintiff's property was destroyed, the fire being beyond control when the fire department arrived. The court said:

"So that the question is, Could or would the fire have been extinguished if the street had been in good condition for public travel; or, to put it another way, was the destruction of her house caused by the negligent condition of the street? This is altogether problematical."

We are cited to cases in which the fire hose was cut while the firemen were in the act of extinguishing the fire. In *Little Rock Trac. & Elec. Co. v. McCaskill,* 75 Ark. 133 (86 S. W. 997), a hose was stretched across a street railway track, and was playing on a burning house under full head of water; and a few moments "after the fire was under control," the street car ran over

the hose, cutting it in two. It was held that, under such circumstances, a recovery could be had.

In *Erickson v. Great N. R. Co.*, 117 Minn. 348 (135 N. W. 1129), it appeared that the fire hose had been laid across the tracks of the railway company, and that the water had been turned on, ''and the fire was being brought under control,'' when the defendant backed a locomotive across the street, and cut the hose. It was held that, upon the facts shown, a case was made for the jury as to whether the cutting of the hose by the defendant was the proximate cause of plaintiff's loss.

In *Cleveland, C. C. & St. L. R. Co. v. Tauer*, 176 Ind. 621 (96 N. E. 758), the court considered a case that arose on demurrer to a petition that alleged the obstruction of a street, which prevented a fire engine from reaching a fire, and that, because of such construction, the property was destroyed, and the loss incurred. The court said:

''The facts alleged do not show, as a necessary inference, and therefore as a matter of law, that the obstruction was not the proximate cause of damage to appellee. * * * The case before us may be near the verge of liability, but it is not outside.''

In *Metallic Comp. Cast. Co. v. Fitchburg R. Co.*, 109 Mass. 277, it appears that hose had been laid across the railroad track and water applied to the fire, and that it had diminished and would probably have extinguished the fire in a short time, but for the acts of the defendant, when the hose was injured by the movement of the train. It was held that, under these circumstances, the cutting of the hose was the proximate cause of the damages complained of.

In *Clark v. Grand Trunk W. R. Co.*, 149 Mich. 400 (112 N. W. 1121), it appeared that a line of hose had been laid across the railroad track to a fire, and that the hose was cut before the water was turned on. The court held that, if the cutting of the hose occasioned such delay in procuring water that the destruction of plaintiff's property was the direct and necessary result of such carelessness, the plaintiff could recover such damages as were consequent upon such a delay. The record is very meager as to the condition of the fire at the time of the cutting of the hose.

In *Globe Malleable I. & S. Co. v. New York, C. & H. R. R.*

*Co.,* 227 N. Y. 58 (124 N. E. 109), it appeared that an engineer knowingly operated his train in front of an approaching hose cart in such a way as prevented the cart from crossing the railroad tracks and reaching a fire. It also appeared that the train could have been stopped and a passageway provided in two minutes, but that a delay of fifteen minutes was caused. The court said:

"As a result, much greater damage was done by the fire than would have occurred, had the hose carts been able to reach the scene promptly. It is for this damage that the action is brought."

The question of proximate cause is not discussed.

Other somewhat similar cases might be cited. In this class of cases, however, a very different situation was presented from that confronting us in the instant case. It is characteristic of this class of cases that in nearly all of them it appeared affirmatively that, at the time of cutting the hose, or other injury, the fire was either "being extinguished" or was "under control." Such cases present a very different situation from the *Volquardsen* case or the case at bar.

In the instant case, we think that the appellees failed to establish that the blocking of the street was the proximate cause of the destruction of the property of the lumber company. The time that elapsed by reason of the detour was very brief, even though we recognize that a fire may progress with great rapidity. The time required in making the detour was solely a matter of estimate; but actual experiments made by appellant's witnesses (it is true, under conditions not identical) indicate that it could have been made by the fire truck in considerably less than the extreme of five minutes estimated by appellees' witnesses.

Could the fire have been extinguished if the truck had not been delayed? Could it have been extinguished if the hose had not broken? Was the delay of the truck or the bursting of the hose the proximate cause of the loss of the property? It is a matter of some significance that the appellees offered the testimony of expert witnesses who expressed an opinion as to whether or not the fire could have been extinguished by the use of the *chemical apparatus,* either at the time it is assumed the truck

would have arrived if the street crossing had not been blocked, or at the time when it actually arrived at the fire; but that they offered no testimony on the subject as to whether or not the fire could have been extinguished by the use of water after the fire truck arrived, if the hose had not broken. Even if the fire could not have been extinguished by the chemical apparatus, could it have been extinguished by the use of water, with proper hose? These are matters of conjecture and surmise. The fire might have been extinguished, and it might not.

From a careful examination of the record in this case, we are constrained to hold that the question of whether or not the blocking of the street was the proximate cause of the destruction of the property in question was wholly speculative and conjectural, and that the damages sought were remote, problematical, and speculative.

II.   To sustain their contention that the blocking of the street was the proximate cause of the loss of the property, it was essential that appellees establish by a preponderance of the evidence their claim that, but for the blocking of

2. EVIDENCE: opinion evidence: ultimate jury question.

the street, the fire truck would have reached the fire in time to have extinguished it.   Appellees sought to carry this burden by attempting to prove the condition of the fire when first discovered, and its condition at the time the fire truck would have arrived, and then offered the testimony of firemen, as experts, who testified to the opinion that, if the fire truck had arrived the few minutes indicated prior to the time it did, the fire could have been extinguished by use of the chemical apparatus on the truck.

At the threshold of this proposition, one serious difficulty confronts the appellees, and that is the laying of the foundation for this opinion evidence by establishing in the first place the assumed fact as to what would have been the condition of the fire when the fire truck would have arrived, if it had not been delayed.

It is appellees' contention that the fire progressed with great rapidity, so much so that the time caused by the detour, which is estimated, under the evidence, to be from one minute, eleven seconds, to five minutes, measured the difference between the ability and the nonability to extinguish the fire with the chemical

apparatus. Obviously, the fire did not remain stationary for any appreciable length of time. It was burning rapidly in very inflammable material, with a strong wind blowing. Both sides offered testimony as to the condition of the fire from the time it was discovered until after the fire company abandoned all attempt to subdue it, after the hose broke.

The evidence of the witnesses varied greatly. The appellees assumed that the fire would have been at a certain stage at the time the fire truck would have arrived, if not impeded, and then interrogated its expert witnesses regarding their opinion as to whether or not the fire could have been extinguished under such conditions, by the use of the chemical apparatus. As a sample of this line of inquiry, the chief of the fire crew was asked:

"Now, Mr. Wildman, I will ask you to give us your judgment as to whether or not your fire department could have extinguished, by the use of the chemical apparatus on the fire truck, a fire in the ceiling of that office of the Eclipse Lumber Company which had covered an area of approximately four feet by six feet."

The objection to the question being overruled, the witness replied: "Oh, they could have,—yes."

The witness was then asked:

"Now, Mr. Wildman, give us your judgment as to whether or not, at the time you arrived at the Eclipse Lumber Company fire that night, as heretofore related by you, it would have been possible for your department to have extinguished that fire as you then found it, with your chemical apparatus alone."

The objection to this question was overruled, and the witness answered: "Not at the time I arrived there."

Another witness was asked:

"Now, Mr. Allison, assuming that there was a fire in the ceiling of the Eclipse Lumber Company office building between the first and second floors, in extent approximately four by six feet, I will ask you to say whether or not, in your judgment, such a fire could have been extinguished with your chemical apparatus."

The witness answered, "Yes, sir."

Other interrogatories of a similar character were pro-

pounded to other firemen, who were permitted to answer, and express their opinion to the effect that the fire could have been extinguished by the chemical apparatus under the assumed conditions.

Like the question of proximate cause, the matter of expert or opinion evidence has been the subject of judicial discussion in numberless cases. Matters requiring special knowledge or skill are properly the subject of expert testimony, and under proper limitations, such experts are permitted to testify as to their opinions respecting matters peculiarly within the domain of their trade or profession. But it is a well recognized rule that an expert cannot be permitted to express an opinion on the ultimate question to be determined by the jury, which must inhere in the verdict. *Martin v. Des Moines Edison Lt. Co.,* 131 Iowa 724, 739; *Sachra v. Town of Manilla,* 120 Iowa 562, 567; *Thayer v. Smoky Hollow Coal Co.,* 121 Iowa 121.

The ultimate question for the jury to determine in this case was whether or not the fire could have been extinguished by the fire company if the fire truck had not been impeded. The questions propounded to these expert witnesses went to the determination of the ultimate fact which the jury was called upon to decide. They went to the direct and final question in the case, namely: that, if the truck had not been impeded, it would have arrived in time for the firemen to have extinguished the fire by the use of the chemical apparatus, but that, because of the time lost in making the detour, it was too late to extinguish the fire by the use of the chemical apparatus when the truck did, in fact, arrive. There was nothing left for the jury to determine on this branch of the case, except the amount of damages, if they accepted the conclusion of these expert witnesses.

In *Bruggeman v. Illinois C. R. Co.,* 147 Iowa 187, the following record occurred in the examination of an engineer of a train, who was an expert witness:

"Q. Taking this train as you was operating that day, applied and constructed as it was, on the track at Toeterville, where you were then running and operating this train, could you have stopped this train by any possibility in any shorter distance than the train was in fact stopped? (Plaintiff objects as calling for a conclusion of the witness. Objection overruled. Plaintiff

excepts.)    A.    No, sir; I could not.    Q.    Could it have been stopped by any human agency in any quicker time on that particular day than it was stopped then?    (Plaintiff objects as calling for a conclusion.)    Q.    In your opinion?    (Objection overruled.    Plaintiff excepts.)    A.    No, sir.''

We said:

''As these questions called for the very matters which the jury was to determine, rather than answers to hypothetical questions, or as to the time in which such a train might have been stopped, the court was in error in overruling the objections.''

In *King v. Chicago, R. I. & P. R. Co.*, 185 Iowa 1227, the following occurred:

'' 'State whether or not there was enough time elapsed between the time you called to him, ''There is the train,'' and the time it struck the mower, for him to have stepped out of the way.' An objection as calling for an opinion and argumentative was sustained, and, we think, rightly so.    To answer it, he must first have concluded at what speed the train was moving, where the train was at that time, how a person of ordinary prudence would be likely to have acted before the mower was hit, and what efforts he would have made to save himself.    The inquiry exacted a conclusion, to be drawn from many controverted facts, and, owing to this, was not permissible.    Moreover, it required of the witness to say what the jury necessarily should have passed on: that is, whether, notwithstanding all that happened, he had time to have stepped away, and avoided injury.    If, in the exercise of reasonable care, he had time enough to escape, there could have been no recovery for the personal injuries as claimed.    All matters bearing on the issue submitted to the witness were shown the jurors, and they were as well qualified as the witness to pass thereon.''

In *Martin v. Des Moines Edison Lt. Co.*, supra, the witness was asked the following question:

''You may state, Mr. Spry, from your knowledge of electrical laws, and from the machinery there, and from what you say, what is your opinion as to whether or not Bass received an electric shock before he fell.''

We said:

"It is not always easy to draw the line between that which is and that which is not admissible under this rule; but, in our judgment, the question now under consideration required the witness to enter the domain of the jury and pass upon one of the ultimate propositions inhering in the verdict, and the answer should have been excluded."

See, also, *Sever v. Minneapolis & St. L. R. Co.*, 156 Iowa 664; *Kirby v. Chicago, R. I. & P. R. Co.*, 173 Iowa 144.

It may be conceded that we have relaxed somewhat the rule when the question arises as to the cause of the death of a human being. *State v. Hessenius*, 165 Iowa 415; *Kirby v. Chicago, R. I. & P. R. Co.*, supra.

In actions of negligence, however, the general rule prevails in this state that a question to an expert is not proper where it permits the witness to decide the whole case and leaves nothing for the jury to do except to believe or disbelieve the witness, and render its verdict accordingly. In the instant case, we are inclined to the conclusion that the trial court should have sustained the appellant's objections to the questions propounded to appellees' expert witnesses, calling for their conclusion to the effect that the fire could have been extinguished by the use of the chemical apparatus, in the event the fire truck had not been blocked. The answers to these questions clearly invaded the province of the jury, and effectively determined the essential question in the case. It was for the jury to consider the condition of the fire, the character of the materials that were burning, the state of the weather, atmosphere, and wind, the time required to make the detour, under the conditions, and the manner of operation and the efficiency of the chemical apparatus with which the fire truck was equipped, and determine the fact as to whether or not the fire could have been extinguished by the chemical apparatus, had the fire truck arrived promptly. It was not for an expert witness to express his conclusion as to this ultimate fact.

It would have been proper for the jury to have before them a description of the chemical apparatus on the fire truck, its method of operation under different conditions, and similar matters to aid the jury in determining the question before it; but it was not for an expert to hold such things in his own mind, and

speak only to the ultimate fact, which the jury alone must determine.

We think the trial court erred in overruling the appellant's objections to the questions herein referred to, which were propounded to appellees' expert witnesses.

As bearing somewhat on the question, see, also, *St. George Pulp & Paper Co. v. Southern New Eng. Tel. Co.*, 91 Conn. 563 (100 Atl. 358); *St. Paul F. & M. Ins. Co. v. Southern Pac. Co.*, 30 Cal. App. 140 (157 Pac. 247); *Cook v. Johnston*, 58 Mich. 437 (25 N. W. 388); *Hitchner Wall Paper Co. v. Pennsylvania R. Co.*, 168 Fed. 602; *Peck v. New York C. & H. R. R. Co.*, 165 N. Y. 347 (59 N. E. 206).

It is unnecessary that we consider other alleged errors relied upon by the appellant. The foregoing matters are determinative of this appeal, and require a reversal of the judgment.—*Reversed.*

PRESTON, C. J., WEAVER, EVANS, and ARTHUR, JJ., concur.