St. George Pulp & Paper Co. *v.* Southern N. E. Telephone Co.

## THE ST. GEORGE PULP AND PAPER COMPANY *vs.* THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY.

*First Judicial District, Hartford, March Term, 1917.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In running its cables through a city upon poles carrying high-tension wires, a telephone company is chargeable with knowledge that currents of high voltage may be brought upon its cables by short circuiting caused by the branches of trees or other conductors, and therefore it is bound to exercise a very high degree of care to prevent its wires from carrying such currents into the premises of its patrons and others where injury to persons or property may result.

The plaintiff sought to recover damages for the destruction of its paper-mill and contents by fire of electric origin, alleged to have been caused by the negligence of the defendant in maintaining its uninsulated and otherwise unprotected telephone cable upon poles to which other wires charged with high-tension currents were attached, and allowing such cable to come in contact with the roof of the defendant's building. *Held* that the plaintiff had the burden of proving not only that the fire was caused by a current of electricity from the defendant's cable, but that this was due to the negligence of the defendant; and that the evidence offered in support of each of these propositions was such as to require its submission to the jury.

While an expert electrician may be asked whether it would be possible for a high-tension current to pass from its own line through the branch of a tree into a telephone cable and set fire to a building with which such cable came in contact, yet it is for the jury and not for the expert to weigh all the facts and determine whether the fire can be explained upon any other hypothesis than that claimed by the plaintiff; and therefore there is no error in excluding a question to the expert which involves his weighing all of the asserted facts before expressing an opinion as to the origin of the fire under investigation.

Cases may arise in which the ultimate and precise question upon which the jury are to pass is so purely technical in its nature that an expert may properly be allowed to give his opinion upon it.

Argued March 7th—decided March 14th, 1917.

---

* Transferred from third judicial district.

ACTION to recover damages for the alleged negligence of the defendant in setting fire to and burning down the plaintiff's factory or mill, brought to the Superior Court in New Haven County where the plaintiff was non-suited in a trial to the jury before *Shumway, J.,* and from the refusal of the trial court to set aside this judgment the plaintiff appealed. *Error and new trial ordered.*

*John H. Light* and *John J. Walsh,* with whom was *Edward J. Quinlan,* for the appellant (plaintiff).

*William F. Henney,* for the appellee (defendant).

THAYER, J. The plaintiff, on September 4th, 1913, owned a building in the city of Norwalk in which it conducted the business of manufacturing wood pulp into paper. The defendant conducted a telephone business in Norwalk. The plaintiff's complaint, in substance, was that on the day mentioned the defendant, in the conduct of its business, negligently, without proper insulation or other means of protection, maintained a telephone cable, attached to and suspended from an uninsulated and unprotected steel carrier cable, over, across and in contact with the roof of the plaintiff's building; that, as the defendant well knew, such unprotected cables were liable to become charged in various ways, from other wires carried on the same poles with the defendant's wires, with currents of electricity of high potential, and rendered liable to set fire to the plaintiff's building; and that by reason of the defendant's negligence in failing to maintain said cable and carrier cables at a proper distance from the building, and to properly insulate the same, and to protect them by other means, a dangerous current of electricity entered the building, on the day before

mentioned, over said cables at the point in the roof where the cables were in contact therewith, and set fire to the building, which, with its contents, was destroyed, without any neglect or default on the part of the plaintiff.

After the plaintiff had introduced its evidence the court, upon motion of the defendant, granted a nonsuit upon the ground that the plaintiff had failed to make out, prima facie, that the fire was caused by the defendant's negligence. That the fire occurred and destroyed the plaintiff's building was not disputed. The plaintiff had the burden of proving not only that the fire was caused by a current of electricity from the defendant's cable, but that this was due to the defendant's negligence. The court correctly held that there was evidence to go to the jury as to the first question. It held that there was no evidence to go to the jury upon the question of the defendant's negligence. In this we think that it was in error.

There was evidence that previous to and at the time of the fire the defendant's cable rested upon the saddleboards at the peak of the roof of the plaintiff's building, and that the defendant had been notified of that fact prior to the fire. The evidence tended to clearly establish the fact that these cables were brought from a terminal upon a pole on Mill Hill to a telephone pole on Smith Street, from which they passed over the plaintiff's building to another pole on the plaintiff's land upon the opposite side of the building, and thence to another part of the city, and that the Mill Hill pole was used in common by the defendant, the street railroad company, and the city, and that the wires of the other occupiers of the pole carried electric currents of high potential, some carrying five hundred and fifty volts, some twenty-three hundred, and others five or six thousand volts, and that the wires carried

on this pole ran through the branches of trees standing near the pole, and that these trees at the time of the fire were in leaf, and that at the time of the fire arcing was observed among the branches of the trees and on the defendant's cables. There was attached to the defendant's cables at the Mill Hill pole, and at each of the other poles mentioned, a ground connection of stranded copper wire extending down the poles to the ground and attached to a grounding device in the earth. There was evidence that directly beneath and parallel with the peak of the roof and about a foot from it, there extended an iron water-pipe connecting with the city water system, and that this pipe was held in place by iron strips attached on each side of the pipe by lag-screws to the rafters, at points near the ridge-pole of the building, and that the saddleboards which were attached to the roof by nails were at the time of the fire wet from the rain which had fallen during the afternoon. There was evidence tending to show that when first discovered the fire was burning at the roof at the point where the defendant's cables were in contact with it, and that inside the building there was no source from which fire could have been communicated to this point in the roof. Experts were called, who testified that in their opinion sufficient electrical current to cause the fire might have been carried from the high-tension wires to the messenger cable and lead sheath of the telephone cable of the defendant, through contact of the wires and cables with the limbs of trees, and that the arcing testified to indicated that such contact and passage of current was taking place at the time of the fire. They also testified that this might occur and the current be carried into and set fire to the plaintiff's building, because the wet and moist wood of the roof and rafters in which nails and lag-screws were driven furnished a path for the current to the water-pipe in the

building, a good conductor of electricity; and that this might occur notwithstanding grounds for such currents were prov'ded at the poles, because the path provided by the moist wood of the roof and the water-pipe furnished a ground in parallel with those at the poles, and the current passing from the high-tension wires upon the defendant's cable would divide itself between these different grounds, so that each would carry its proportion of the current which would be inversely to the resistance of the path to the ground; and one of these expert witnesses gave it as his opinion, in answer to a hypothetical question in which these facts were incorporated, that the fire was caused by a current from the defendant's cable.

This evidence not only tended to prove that current from the defendant's cable caused the fire, but also tended to prove that it was caused by the defendant's negligence. It is the defendant's claim that because it appears that means had been provided for grounding currents of high potential which should get upon its cable, it was incumbent upon the plaintiff to show that the provision which had been made was not adequate, and attention is called to the testimony of one or more of these experts, on cross-examination, that if the grounds provided for this purpose had been adequate to take care of any foreign currents which should get into the defendant's cables the fire would not have been caused by a current from those cables. The cross-examination still left unanswered the testimony of the expert who gave it as his opinion that the fire was caused by a current from those cables. If the experts were correct in their testimony that if the grounds provided had been adequate to carry off all foreign currents the fire would not have been caused by a current from the defendant's cables, and the other expert was correct in his opinion that the fire was caused by a

current from those cables, it follows that the grounds provided by the defendant were inadequate to take care of the foreign current upon its wires at the time of the fire. But the question upon cross-examination, to which the answers upon which the defendant relies were given, assumes that the grounds provided should be of such small resistance that the path caused by the grounding of the defendant's cable, through the plaintiff's roof, upon the water-pipe, would be of such comparatively great resistance that the amount of current thereby passed through the plaintiff's roof would be negligible. If the fire was caused by a current from the defendant's wire, as it is clear that the jury might have found from the plaintiff's evidence, that current must have been of high potential and one which the defendant's grounds did not take care of. The defendant, in carrying its wires through the city and placing them upon poles carrying high-tension wires, was chargeable with knowledge that currents of high potential might be brought upon its cables by the branches of trees or other conductors coming in contact with such high-tension wires and its own cables, and a very high duty was thus imposed upon it to prevent its wires from carrying such currents into the premises of its patrons and others where injury to person or property might result. If the grounds provided by it at the poles were inadequate for this purpose, the defendant neglected this duty; if they were adequate for this purpose when its lines were properly supported upon its poles, but inadequate when its line had sagged upon the plaintiff's roof and thus provided a low-resistance ground for such currents through the roof and water-pipe, then the defendant was negligent in permitting the cable to sag and remain, after notice, upon the plaintiff's building. In either case the defendant would be chargeable with the negligence alleged in the complaint, and

there was evidence for the jury tending to show that in one of these ways the defendant was guilty of negligence.

It is claimed that if the fire was caused by a high-tension current from the defendant's wire, which was allowed to escape from the high-tension wires upon the Mill Hill pole, the negligence which caused the injury is attributable to the owner of the high-tension wire and not to the defendant. As above stated, the defendant was bound to anticipate that such currents might escape and get upon its cables and wires, and was bound to provide against these being carried along its wires upon the property of others to their injury. If it failed to make proper provision against this it is primarily liable for injury therefrom resulting to the plaintiff, although another may also be liable.

Of the assignments based upon rulings upon questions of evidence, only one has been pursued by the plaintiff, and that is whether the court was in error in excluding the question, asked an expert witness, whether, upon the facts stated in a hypothetical question, in his opinion the fire was caused by a current of electricity passing over the metal messenger and cable to the peak of the roof. We think that there was no error in excluding this question. The expert questions upon which the court and jury needed the assistance of a professional electrician were whether a current of high potential could, through contact of the branches of trees with different cables, be carried from the cable where it belonged upon the cable of the defendant; and if so, whether, with the provisions made for grounding it at the poles, a current of sufficient potential to carbonize and set fire to the wood work of the plaintiff's roof could, by reason of the grounding of the defendant's cable through the roof and water-pipe, be carried along the defendant's cable and through the roof to the water-

pipe. All this might be true and yet the fire have had a different origin. The plaintiff had proved certain facts from which it was to ask the jury to find that the fire could have had no other origin. The hypothetical question included these facts, and the witness was thus asked to weigh those facts as well as those relating to the expert question. The expert was called to give his opinion as to whether the roof could have been set on fire by a current over the defendant's cable. If from such opinion the jury found that the fire might have been caused by such current, and that the other evidence excluded any hypothesis that the fire was caused by other means, they could very properly reach the conclusion that the fire was caused by current from the defendant's cable. It was for them, and not for the expert, to weigh the facts and determine the question whether the fire could be explained upon any other hypothesis than that claimed by the plaintiff. To this question the expert stood in a very different relation from that which he bore to the question whether the fire could have been caused by a current over the defendant's wire. This was a question for the jury to decide, but being an expert question they were entitled to expert advice, and the expert gave his opinion as to the precise question which they were to decide. It is unnecessary to consider the cases referred to by the plaintiff. There may arise cases where the ultimate question in a case is purely an expert one, where the expert witness may be called upon to give his opinion upon the precise question upon which the jury is to pass. This is not such a case.

There was error in refusing to set aside the nonsuit and the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.