## STATE OF CONNECTICUT *v.* JOSE VILALASTRA
## (3726)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued November 6, 1986—decision released February 17, 1987

*Judy Ann Stevens,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant appeals from his judgment of conviction rendered in accordance with the jury verdict of guilty on the following counts: possession of cocaine with intent to sell or dispense, a violation of General Statutes § 21a-277 (a); possession of marihuana, a violation of General Statutes § 21a-279 (c); possession of cocaine, a violation of General Statutes § 21a-279 (a);[1] and possession of drug paraphernalia, a violation of General Statutes § 21a-267 (a). The defendant claims that the trial court erred (1) in denying the defendant's motion to suppress evidence seized pursuant to a search warrant which contained an allegedly inadequate description of the premises to be searched, (2) in finding that the evidence presented was sufficient to establish beyond a reasonable doubt that the defendant had constructively possessed the articles which were seized during the search of the apartment, (3) in instructing the jury that the testimony of the defendant's girlfriend would have been unfavorable to him if she had testified, and (4) in admitting the opinion testimony of two police officers on the issue of the defendant's intent to sell narcotics.

The jury could reasonably have found the following facts: On December 16, 1983, officers of the Bridgeport police department executed a search warrant for the defendant's person and his residence. The residence was described in the search warrant as "[t]he first floor

[1] The third count of the substitute information alleged a violation of General Statutes § 21a-279 (a) and the jury found the defendant guilty of this count. The judgment entered by the clerk of the trial court, however, incorrectly identifies the defendant's conviction on the third count of the substitute information to be a violation of General Statutes § 21a-277 (a).

apartment front located in a yellow wood frame multi-family dwelling house with brick front, located at 139 Asylum St., Bpt., Conn." Pursuant to the search warrant, the police stopped and searched the defendant as he was exiting from his garage on the premises. As a result of the search of the defendant's person, the police discovered a quantity of plant-like material, later identified as marihuana, and a tin foil packet containing white powder in a cigarette package taken from his pocket. This white powder was later found to be cocaine.

After the search of the defendant, the police accompanied him to his apartment, gaining entry by using the defendant's keys. Once inside, they encountered a woman later identified as Carmen Matos. She was the defendant's girlfriend. She leased the apartment which they had shared since June, 1981, when he moved in after meeting her at his place of employment. Pursuant to the search warrant, the police conducted a search of the apartment in the presence of its occupants.

Detective James Honis, of the Bridgeport police department special services division, testified that his search of the bedroom uncovered a brown pouch in the headboard of the bed. The pouch contained eight small bags of white powder, which was later established to be cocaine. The search of a small sitting room uncovered a black plastic grinder and a spoon, both having traces of cocaine. A brown bottle labeled "Lactose," containing white powder and traces of cocaine, was found in the same area. Six photographs with traces of cocaine, a box of plastic bags, a box of aluminum foil and $801 in cash were also discovered. The cocaine was 83 percent pure and its total weight was ninety-four hundredths of an ounce.

Honis testified, without objection, that, on the basis of his training and experience, the spoon was used for

snorting cocaine. He also testified, this time over the defendant's objection, that the grinder was used for grinding hard cocaine and mixing cocaine with lactose, a cutting or diluting agent. The defendant again objected when Honis testified that it was his opinion, on the basis of his training and experience, that possession of the grinder, the bottle of lactose and the spoon indicates that a person is in the business of cutting and packaging cocaine or some other narcotic. He also testified that the cocaine, which was 83 percent pure, would be cut and "knocked down" to a lesser purity.

Detective Paul Lengyel, of the Bridgeport police department special services division, also testified concerning his opinion on the defendant's intent to sell the cocaine. Over the defendant's objection he was asked whether, in his opinion based upon his training and experience, all of the items found in the defendant's apartment and introduced into evidence were possessed with the intent to sell or dispense cocaine or possessed for the defendant's personal use of the narcotic. The witness stated that it was his opinion that these items would be used for the sale of cocaine, and not for personal use. He explained that one does not need a grinder or lactose for personal consumption. If a person were buying for his own personal use, it would already be cut. He also indicated that the purity of the cocaine, 83 percent, meant to him that it was intended for distribution.

The defendant testified on his own behalf. He admitted living at 139 Asylum Street with Carmen Matos for two and one-half years before his arrest. Although they were not married, he called Matos his "wife." He admitted possessing the marihuana found on his person, but denied all knowledge of the cocaine which the police found on his person and in the apartment. He admitted sharing the bedroom with Matos, including

the bed and headboard where the eight bags of cocaine were found, but maintained, however, that they did not go into each other's personal belongings.

Matos was not called to testify for the state because its efforts to have her served with a subpoena were unsuccessful. During its instructions to the jury, the trial court gave the following charge: "The defendant testified that he lived with Carmen Matos. She did not testify in the case. It is true that when a party fails to call to the stand a witness who if so called to testify, to any material fact, or where such witness would naturally be produced by such party, you are entitled to infer that had she testified, that the testimony would be unfavorable to the accused. . . . [T]he conditions must be met here before you may draw an inference. A witness who would naturally be produced [by] a party is one who is known to the party and who, by reason of his relationship to that party or the issues or both, would reasonably have been expected to have peculiar or superior information material to the case which, if favorable, the party would have produced. She must also have been available within the jurisdiction and more naturally have been produced by the party against whom you are asked to draw such an inference. Again you may draw such an inference if you are satisfied of the basis. . . . You may or may not draw such an inference." The defendant excepted to this charge.

The jury returned a verdict of guilty on all four counts in the substituted information. The defendant was sentenced to an effective term of five years.

I

The defendant's first claim is that the trial court erred in denying the defendant's motion to suppress all evidence seized pursuant to the search warrant. The defendant alleges that the search warrant did not describe the place to be searched with adequate par-

ticularity. See *State* v. *Abbott,* 5 Conn. App. 441, 447, 499 A.2d 437 (1985). This allegation, however, is not substantiated by the record. "We recognize the requirement of the fourth amendment as precluding the issuance of a search warrant that does not adequately describe the premises to be searched. However, 'if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended' this mandate is satisfied. *Steele* v. *United States No. 1,* 267 U.S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757 (1925); *State* v. *Abbott,* [supra, 446–47]. The warrant's description of the premises 'need only define the search with practical accuracy' which is satisfied if it tells the executing officers where to go and what to enter. *United States* v. *Fitzmaurice,* 45 F.2d 133, 135 (2d Cir. 1930).

"A search warrant directed against a multiple-occupancy structure, as here, will be deemed valid if it describes 'the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons.' Annot., 11 A.L.R.3d 1330, 1333 (1967); *United States* v. *Bedford,* 519 F.2d 650, 654–55 (3d Cir. 1975), cert denied, 424 U.S. 917, 96 S. Ct. 1120, 47 L. Ed. 2d 323 (1976); *State* v. *Abbott,* supra, 447. A more particular description obviously lessens the likelihood of a general search of such a structure." *State* v. *Burgos,* 7 Conn. App. 265, 268–69, 508 A.2d 795 (1986).

The search warrant describes the place to be searched as "[t]he first floor apartment front located in a yellow wood frame multi-family dwelling house with brick front, located at 139 Asylum St., Bpt., Conn." This description particularizes the multi-family building and the specific location of the apartment unit within that building to be searched. The record is devoid of any evidence that there was more than one apartment

located at the front of the first floor. The warrant, therefore, sufficiently specified the premises to be searched. The trial court was correct in denying the motion to suppress on that ground.

## II

The defendant's second claim is that the trial court erred in concluding that the evidence was sufficient to support the jury's finding beyond a reasonable doubt that the defendant possessed the items seized in the apartment, including the eight bags of cocaine found in a pouch on the headboard of the defendant's bed which he shared with Matos. "In reviewing such a claim, we view the evidence, as we have repeatedly stated, with a view toward sustaining the verdict of the jury. *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983).

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. See *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 72 (1975); *State* v. *Harris,* 159 Conn. 521, 531–32, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971). Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958); see generally annot., 56 A.L.R.3d 948 (1974)." *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985).

It is undisputed that the defendant was not in exclusive possession of the premises where the narcotics were found. There were, however, other incriminating circumstances to support the inference that the defendant knew of the presence of the narcotics and had control of them. The jury could reasonably have found that the cocaine was found in the bedroom where the defendant had been living for over two years. There was male clothing about the room which the jury could reasonably have inferred belonged to the defendant. When the defendant was personally searched earlier that day, the police discovered a small quantity of cocaine on his person. On the basis of the foregoing evidence, the jury could reasonably have found beyond a reasonable doubt that the defendant knew of the presence of cocaine in the apartment and exercised control over it. See *State* v. *Baldwin,* 7 Conn. App. 477, 480–81, 509 A.2d 76 (1986).

The case of *State* v. *Alfonso,* supra, is distinguishable from the present case. In *Alfonso,* the defendant lived with two roommates. The marihuana there was separate from the defendant's personal belongings, and there was no evidence that the defendant had used marihuana in the past. Id., 634. In the present case, however, the cocaine was found in the bedroom used by the defendant and his girlfriend. The narcotics were not found in the same type of common living area as in *Alfonso,* nor was this the same type of group living arrangement. Additionally, while there was no evidence that the defendant was a user of cocaine, there was evidence that he was carrying a quantity of cocaine when he was first searched. He had a personal connection to the possession of cocaine. There was no evidence of personal possession or use of cocaine by Matos.

Reviewing the evidence with a view toward sustaining the verdict; id., 633; we find that the evidence was sufficient to support the inference that the defendant

constructively possessed the cocaine found in the apartment, principally the eight bags in the pouch found in the headboard of his bed.

## III

The defendant's third claim is that the trial court erred in instructing the jury that they could infer that had Matos testified, her testimony would have been adverse to the defendant's case. " 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. . . . There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce. . . . A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce.' *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). The rule is applicable to criminal prosecutions. *State* v. *Daniels,* 180 Conn. 101, 109, 429 A.2d 813 (1980)." *State* v. *Watley,* 195 Conn. 485, 488, 488 A.2d 1245 (1985). In order to have the jury charged on the rule, the party claiming the benefit must show that he is entitled to it. *State* v. *Carrione,* 188 Conn. 681, 688, 453 A.2d 1137 (1982).

The defendant claims that the state was not entitled to an adverse inference charge because the witness, Matos, was equally available to both parties, or not available at all. In *State* v. *Reid,* 193 Conn. 646, 662–63, 480 A.2d 463 (1984), the Supreme Court observed that "[a]lthough it may be within the power of either party to produce certain evidence, if that evidence 'was so

related to the whole proof in the case that one of the parties and not the other would be expected to produce it, an inference would be justified that the [evidence], if produced, would be unfavorable to that party.' *Turner* v. *Scanlon,* 146 Conn. 149, 161, 148 A.2d 334 (1959).'' The court in *Reid* went on to note that the defendant failed to argue the equal availability of the witness before the trial court. *State* v. *Reid,* supra, 663.

In the present case, we find that the witness was unavailable to the state. The record indicates that the state made two unsuccessful attempts to subpoena the witness. We also find that the witness was available to the defendant. The record indicates that the defendant was living with her while out on bail pending his trial. We also note that the testimony of Matos was crucial to establish the defendant's assertion that the cocaine found in the apartment was not his. We conclude, therefore, that the defendant's claim that the witness was equally available to both parties is unavailing. See id.

The defendant makes the alternative argument that the witness was unavailable. He argues that if she was compelled to testify, she would be forced to invoke her fifth amendment right to be free from self-incrimination. In support of this claim, the defendant cites *State* v. *Rosa,* 170 Conn. 417, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976). In that case, the Supreme Court held that since the record indicated that an apparently available witness, if called by the state, would have refused to answer any questions, thus causing prejudice to the defendant, it could not be said that the defendant there had shown an entitlement to an adverse inference charge. Id., 431.

The reasoning of the court in *State* v. *Rosa,* supra, is not applicable to the present case. The court there found that the defendant could not seek an adverse

inference charge from the state's failure to call a witness whose privilege against self-incrimination would prejudice the defendant. The court found, based on the record before it, that if the state called the witness, who then refused to testify pursuant to her rights under the fifth amendment, such action "may have prompted a defense claim that the state's decision to call her as a witness, knowing that she may invoke her fifth amendment privilege, was so prejudicial as to create error." Id., 430–31. The court also found that if the witness waived her fifth amendment right, her testimony may not have corroborated the defendant's account of the facts surrounding the charge he faced.

The reasoning in *State* v. *Rosa,* supra, is inapposite to the present case. Since the adverse inference instruction was triggered by the defendant's failure to call a knowledgeable witness, there could be no likelihood of prejudice to him caused by the prosecution arising from her testimony. Furthermore, the record here contains no indication that the witness would not have corroborated the defendant's testimony. In the light of these distinguishing facts, *State* v. *Rosa,* supra, is not dispositive of the issue.

We still need to decide, however, whether the defendant's allegation that the putative witness would have invoked her privilege to be free from self-incrimination is a sufficient basis upon which to find that Matos was unavailable to testify.

"When the *witness* is *privileged,* and the privilege is *independent of the party's control,* the witness' claim of privilege renders the party unable to use his testimony; but it would seem that the witness should at least have been summoned and asked, for he may waive his privilege." (Emphasis in original.) 2 J. Wigmore, Evidence (Chadbourn Rev.) § 286, p. 201. We agree with the reasoning of this treatise. The defendant offered

no evidence to the trial court that Matos would invoke her privilege against self-incrimination. We find, therefore, that the defendant has not sustained his burden of proof that the witness was unavailable to testify.

In conclusion, we find that Matos was a witness who was available to the defendant and one who would naturally have been produced by him. The trial court was correct in concluding that the state had sustained its burden of proof to warrant an adverse inference charge.

## IV

The defendant's final claim is that the trial court erred in admitting the opinion testimony of two police officers as experts on the issue of possession of cocaine with intent to sell. He alleges that this testimony was speculative, conjectural, beyond the competency of the witnesses and an invasion of the province of the jury.[2]

Officer Honis was asked to explain the relationship between the purity of the cocaine seized "in your opinion and whether or not this would be possession with the intent to sell or dispense." The defendant's objection to the question was overruled and the witness responded that "[i]t would be my opinion that cocaine that is 83% [pure] would be cut down, would be cut with say some lactose, to be knocked down to a lesser purity." He testified further that cocaine commonly seized on the street "runs three, five or eight percent purity."

---

[2] The state argues that the defendant failed to object to the opinion testimony of Officer Honis. It argues that the defendant has failed to comply with Practice Book §§ 288 and 3060F (d) (3) (now § 4065 [d] [3]) and is raising this issue for the first time on appeal. We disagree. The record indicates that the defendant objected to the prosecutor's solicitation of Honis' opinion on the defendant's intent to sell. The trial court was fairly apprised of defense counsel's objections and had overruled them. We shall, therefore, review the defendant's claim.

Detective Lengyel was also asked whether he could formulate an opinion, based upon his training and experience, as to whether items found and seized in the apartment, namely cash of $801, a grinder, a bottle of lactose, a small spoon, and eight bags of cocaine, were indicia of the possession of cocaine with the intent to sell or dispense. The officer replied that he had such an opinion. When asked by the prosecutor what that opinion was, the defendant again objected to the question as calling for speculation and conjecture on an ultimate issue of fact which had to be reserved for the jury. That objection was again overruled. The witness responded to the question, stating that "[m]y opinion is that this would be used for sale, not personal use."

" '[T]he qualification of an expert witness is within the sound discretion of the trial court and its decision will not be disturbed on appeal unless that [discretion] is abused . . . . ' " *State* v. *Ortiz,* 198 Conn. 220, 228, 502 A.2d 400 (1985). "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to the matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). The trial court did not err in finding that the police officers possessed a special skill related to the matter in issue and that they qualified as expert witnesses.

The issue here, however, is not whether the witnesses qualified as experts, but if they could give opinions, based on the facts of this case, as to whether the defendant possessed cocaine with the intent to sell or dispense. "[I]ntent is a question of fact for the determination of the trier of fact based upon competent evidence presented, and a witness cannot testify as to the uncommunicated intent of another person where the trier of fact is as well qualified as the witness to form an opin-

ion on the subject." *State* v. *Delgado,* 178 Conn. 448, 449, 423 A.2d 106 (1979) (intent to injure). Where the issue is intent to sell narcotics, a police officer, testifying as an expert, may give an opinion as to the quantity of narcotics which a dealer might possess or the manner in which a drug might be transported by a dealer. *State* v. *Grayton,* 163 Conn. 104, 111, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972); *State* v. *Williams,* 169 Conn. 322, 334, 363 A.2d 72 (1975).

The substance of the defendant's claim is that the questions were improper because they required the witness to give his opinion on an ultimate issue of fact for the jury, namely, the defendant's intent to sell or dispense narcotics. Similar testimony has been held to be improper because it allows the witness to draw a conclusion relating to guilt or innocence, which conclusion is for the trier of fact to determine. See *State* v. *Heinz,* 193 Conn. 612, 628, 480 A.2d 452 (1984). Other cases have recognized a similar limitation upon expert testimony. See *Kowalewski* v. *Mutual Loan Co.,* 159 Conn. 76, 80, 266 A.2d 379 (1970) (whether allowing roof water to collect and freeze in a depression existing in a private walkway was reasonably safe for tenant use); *State* v. *Donahue,* 141 Conn. 656, 667, 109 A.2d 364, cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257 (1954) (whether defendant acted in a wilful, deliberate and premeditated manner); *State* v. *Apostle,* 8 Conn. App. 216, 231–33, 512 A.2d 947 (1986) (whether intercourse was consensual or nonconsensual).

Rule 704 (b)[3] of the Federal Rules of Evidence provides: "No expert witness testifying with respect to the mental state or condition of a defendant in a crimi-

---

[3] Rule 704 (a) of the Federal Rules of Evidence provides as follows: "Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

nal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."[4]

The limitation placed upon the scope of expert testimony by Connecticut case law, taken in conjunction with the prohibition set forth in § 704 (b) of the Federal Rules of Evidence, leads us to conclude that it was error for the trial court to allow the police officers to give opinion testimony on the defendant's intent to sell narcotics. Because this claim implicates the defendant's constitutional right to a fair trial, we must, therefore, sequentially decide whether the error was harmless beyond a reasonable doubt. *State* v. *Cohane,* 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).

At the outset, we note that only in rare cases do we find error to be harmless beyond a reasonable doubt. See *State* v. *Gordon,* 185 Conn. 402, 419, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982). Where the error of the trial court intrudes upon the constitutional rights of the accused, it is the state's burden to show that the error was harmless beyond a reasonable doubt. *State* v. *Cohane,* supra, 485. Failing that, where a reasonable doubt exists, the case should be remanded for retrial to protect the defendant's right to a fair trial.

---

[4] Rule 704 (b) of the Federal Rules of Evidence served as the model for Public Acts 1985, No. 85-605, effective October 1, 1985, which provides as follows: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone." General Statutes § 54-86i.

We cannot find that the police officers' testimony could not have affected the jury verdict. There is clearly a logical connection to the improper testimony and the jury verdict. Despite the trial court's general instruction that the jurors were free to disregard the testimony of the expert witnesses, and the other evidence indicating that the cocaine was intended for sale, rather than personal use, we cannot, in retrospect, determine what weight the jury gave this testimony. For this reason, we cannot find beyond a reasonable doubt that the inadmissible testimony did not affect the jury verdict. The state has not sustained its burden of proving this error harmless.

There is error on count one only, the judgment is set aside as to that count and the case is remanded for a new trial on that count. There is no error on the remaining counts.

In this opinion the other judges concurred.