STATE OF CONNECTICUT *v.* JOSE VILALASTRA
(13160)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued February 2—decision released April 5, 1988

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* and *Frank S. Maco,* assistant state's attorneys, for the appellant (state).

*Judy Ann Stevens,* for the appellee (defendant).

SHEA, J. A jury found the defendant guilty of the crimes of possession of cocaine with intent to sell, a violation of General Statutes § 21a-277 (a),[1] possession of marihuana, a violation of General Statutes § 21a-279 (c), possession of cocaine, a violation of General Statutes § 21a-279 (a), and possession of drug para-

---

[1] "[General Statutes] Sec. 21a-277 (Formerly Sec. 19-480). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned."

phernalia, a violation of General Statutes § 21a-267 (a). On the defendant's appeal from the judgment of conviction, the Appellate Court determined that the trial court had erred in allowing two police officers, as expert witnesses, to give opinion testimony concerning the defendant's intent to sell cocaine. *State* v. *Vilalastra,* 9 Conn. App. 667, 521 A.2d 170 (1987). The Appellate Court's conclusion in this regard affected only the conviction for possession of cocaine with intent to sell. The state, after this court had granted certification, appealed from the Appellate Court's judgment reversing in part the judgment of the trial court. We conclude that the trial court did not err in admitting the expert testimony of Detective James Honis. We also conclude that the trial court did err in admitting a portion of Detective Paul Lengyel's expert testimony, but we determine that this error was harmless in nature. Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court with direction to reinstate the judgment of the trial court.

Although the facts that the jury could reasonably have found are set forth in *State* v. *Vilalastra,* supra, we summarize those pertinent to the issues in this appeal. Pursuant to a search warrant, the Bridgeport police department searched the defendant's apartment in the city of Bridgeport. Officer Honis, during his search of the bedroom, uncovered a brown pouch in the headboard of the bed. The pouch contained eight bags of white powder, which later proved to be cocaine. The police found a black plastic grinder and a spoon, both having traces of cocaine, in a small sitting room. A brown bottle labeled "Lactose," containing white powder and traces of cocaine, was found in the same area. Six photographs with traces of cocaine, a box of plastic bags, a box of aluminum foil and $801 in cash were also discovered. Charles Reading, a toxicologist, testified that the cocaine in the eight packets was 83 percent

pure, and that its total weight was about nine-tenths of an ounce.

## I

The only issue presented by this appeal is whether the Appellate Court was correct in concluding that the trial court erred in allowing Honis and Lengyel, as expert witnesses, to give opinion testimony concerning the defendant's intent to sell cocaine and that such error was not harmless under the standard applicable to constitutional errors. We note initially that the Appellate Court concluded that "[t]he trial court did not err in finding that the police officers possessed a special skill related to the matter in issue and that they qualified as expert witnesses." *State* v. *Vilalastra,* supra, 679. The defendant does not challenge the Appellate Court's conclusion in that regard.

Honis was asked by the state's attorney, "Assume the fact that has been testified to that State's Exhibit F has 83 percent cocaine . . . . I am asking you how that would affect your opinion you have previously given for the purpose for which it was possessed."[2] Honis responded that "[i]t would be my opinion that cocaine that is 83 percent [pure] would be cut down, would be cut with say some lactose, to be knocked down to a lesser purity." He testified in addition that cocaine

---

[2] The Appellate Court concluded that the following question by the state's attorney was erroneously allowed: "Honis was asked to explain the relationship between the purity of the cocaine seized 'in your opinion and whether or not this would be possession with the intent to sell or dispense.' " *State* v. *Vilalastra,* 9 Conn. App. 667, 678, 521 A.2d 170 (1987). The trial court overruled the defendant's objection to that question, but Honis never answered it. Instead, he asked the state's attorney to repeat the question. The state's attorney then rephrased the question in the form quoted in the text of this opinion. The defendant did not object to this rephrased question. The lack of an objection does not preclude our review of this claim, however, because the Appellate Court determined that Honis' reply, which is quoted in the text of this opinion, implicated constitutional error. Id., 678–81; see *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

commonly seized on the street "runs three, five or eight percent purity."

The state's attorney asked Lengyel, "Would you [be] able to formulate an opinion based on your training and experience and the facts as I gave you, whether or not the items found . . . were possessed for either personal use and consumption or with the intent to sell and or dispense?" After the trial court had overruled the defendant's objection that this question was "purely speculative and conjectural and goes to the ultimate issue that the jury has to determine on the first count," Lengyel replied, "My opinion is that this would be used for sale, not personal use."

The Appellate Court "conclude[d] that it was error for the trial court to allow the police officers to give opinion testimony on the defendant's intent to sell narcotics." *State* v. *Vilalastra,* supra, 681. In reaching this conclusion, the Appellate Court relied on "[t]he limitation placed upon the scope of expert testimony by Connecticut case law, taken in conjunction with the prohibition set forth in § 704 (b) of the Federal Rules of Evidence . . . ." Id.

To the extent that the Appellate Court may have rested its decision on rule 704 (b),[3] it was applying a rule of evidence that was without force even in the federal courts at the time of trial. The trial of this case took place from August 15 to August 22, 1984. Rule 704 (b) did not become effective in the federal courts until October 24, 1984. We note initially that the Federal Rules of Evidence are not binding on our courts, although they are often influential in shaping our

---

[3] Rule 704 (b) of the Federal Rules of Evidence provides: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."

evidentiary rules. See *State* v. *McCarthy*, 197 Conn. 166, 173, 496 A.2d 190 (1985). Newly enacted statutes are generally given only prospective effect unless there is clear evidence that the legislature intended to give the statute retroactive effect. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 232–33, 477 A.2d 988 (1984). In those cases in which our courts choose to follow the Federal Rules of Evidence, those rules should ordinarily have only a prospective effect. Our conclusion that the Appellate Court should not have retroactively applied rule 704 (b) to the case at bar is consistent with legislative action in this evidentiary area. As the Appellate Court noted, rule 704 (b) served as the model for Public Acts 1985, No. 85-605, which became effective on October 1, 1985.[4] General Statutes § 54-86i; *State* v. *Vilalastra,* supra, 681 n.4. There is no evidence in the legislative history or the text of this statute that the legislature sought to give it retroactive effect.[5] Accordingly, we need not decide whether General Statutes § 54-86i would bar the testimony given by either Honis or Lengyel in this case.

We also conclude that the Appellate Court erred when it determined that the opinion testimony of Honis was inadmissible because of the "limitation placed upon the scope of expert testimony by Connecticut case law."

[4] "[General Statutes] Sec. 54-86i. TESTIMONY OF EXPERT WITNESS RE MENTAL STATE OR CONDITION OF DEFENDANT. No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

[5] The legislative history of Public Acts 1985, No. 85-605, may be found in: (1) 28 H.R. Proc., Pts. 20, 29, 32, 35, 1985 Sess., pp. 7120–97, 10,728–42, 11,592, 12,442–49; and (2) 28 S. Proc., Pts. 14, 16, 17, 1985 Sess., pp. 4719–30, 5199–5204, 5603–5605, 5635–36. The text of General Statutes § 54-86i is contained in footnote 4, supra.

*State* v. *Vilalastra,* supra, 681. An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact. *State* v. *Donahue,* 141 Conn. 656, 667, 109 A.2d 364 (1954), appeal dismissed and cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257 (1955). "Experts can [however,] sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass. *State* v. *Johnson,* 140 Conn. 560, 563, 102 A.2d 359 (1954). *Geraty* v. *Kaufman,* 115 Conn. 563, 572, 162 A. 33 (1932). Expert opinion on the ultimate issue in professional negligence cases is routine. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 430 A.2d 1 (1980)." C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 7.17.3, p. 186. In *State* v. *Johnson,* supra, 562, a police officer, who had been qualified as having expert knowledge of the mechanics of the numbers game, "was asked to express his opinion as to the significance of the numbers written on [certain] cards." The officer expressed his opinion concerning the numbers after the trial court had overruled an objection by the defendant "that any answer which the witness might give would, in effect, be a usurpation of the function of the court to determine what significance, if any, should be attributed to the numbers." Id. We held: "Only through an expert's opinion could the court intelligently make a finding as to the purpose, if any, of the writings. The situation was of such a nature as to require an expert to express an opinion on the precise question upon which the court ultimately had to pass. *Lentine* v. *McAvoy,* 105 Conn. 528, 533, 136 A. 76 [1927]; *St. George Pulp & Paper Co.* v. *Southern New England Telephone Co.,* 91 Conn. 563, 570, 100 A. 358 [1917]. The court did not abuse its discretion in admitting [the police officer's] testimony." Id., 563.

The Appellate Court acknowledged that "[w]here the issue is intent to sell narcotics, a police officer, testifying as an expert, may give an opinion as to the quantity of narcotics which a dealer might possess or the manner in which a drug might be transported by a dealer. *State* v. *Grayton,* 163 Conn. 104, 111, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972); *State* v. *Williams,* 169 Conn. 322, 334, 363 A.2d 72 (1975)." *State* v. *Vilalastra,* supra, 680. The case of *State* v. *Williams,* supra, cited by the Appellate Court, is especially pertinent to the case at bar: "The police officer was asked whether it would be usual or unusual to find a person who is only a narcotics user in possession of as many as forty-five bags of heroin at a time. The defendant objected on the grounds that the question called for an answer in speculation and that it was also irrelevant and immaterial. The witness answered that it would be highly unusual. The defendant was charged not only with possession but also with intent to sell. Specific intent is usually proven by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686 [1958]. *State* v. *Nathan,* 138 Conn. 485, 488, 86 A.2d 322 [1952]. One of the circumstances relevant to such specific intent in this case was the amount of heroin possessed by the defendant. *State* v. *Avila,* 166 Conn. 569, 577, 353 A.2d 776 [1974]. It was proper for the state to offer evidence to aid in determining the questions in issue, and particularly through a police officer who qualified as an expert on the habits of narcotics users. *State* v. *Grayton,* [supra]; *State* v. *Grosso,* 139 Conn. 229, 233, 93 A.2d 146 [1952]. Any objection to this officer's testimony would go to its weight rather than to its admissibility. *State* v. *Grayton,* supra."

Honis' testimony was similar to that given by the officer in *State* v. *Williams,* supra. Honis was asked by the state's attorney, "Assume the fact that has been tes-

tified to that State's Exhibit F has 83 percent cocaine. . . . I am asking you how that would affect your opinion you have previously given for the purpose for which it was possessed." Honis responded, "It would be my opinion that cocaine that is 83 percent would be cut down, would be cut with say some lactose, to be knocked down to a lesser purity." The state's attorney then asked, "Based on your training and experience and investigations in the field, could you explain why?" Honis then answered that cocaine commonly seized on the street "runs three, five or eight percent purity." There is no significant difference between Honis' testimony and that of the police officer in *State* v. *Williams,* supra, that narcotics users did not usually possess as many as forty-five bags of heroin at a time. Honis did not testify that he thought that the defendant had the intent to sell the cocaine found in the defendant's apartment. We conclude that Honis' testimony concerning the customary practice of cocaine dealers was properly admitted by the trial court and that the Appellate Court erred when it determined otherwise.

We agree, however, with the Appellate Court's conclusion that the trial court erred in permitting the state's attorney to ask Lengyel, "Whether or not the items found . . . were possessed for either personal use and consumption or with the intent to sell and or dispense." The state's attorney could have solicited Lengyel's opinion concerning whether these items are commonly used by drug sellers, but it was improper to inquire whether in Lengyel's expert opinion the defendant was a drug seller or user based on the items found.

We recognize that there is considerable authority in other jurisdictions to support the state's contention that the trial court did not err in permitting the state's attorney's disputed question and Lengyel's response.

"[I]n a majority of state courts an expert may state his opinion upon an ultimate fact, provided that all other requirements for admission of expert opinion are met." C. McCormick, Evidence (3d Ed.) § 12, p. 30. Some jurisdictions have even permitted a police officer, who qualified as an expert witness, to testify that in his opinion a defendant had possessed certain drugs with the intent to sell. *State* v. *Carreon,* 151 Ariz. 615, 729 P.2d 969 (Ct. App. 1986); *Hinnant* v. *United States,* 520 A.2d 292 (D.C. App. 1987); *Commonwealth* v. *Johnson,* 358 Pa. Super. 435, 517 A.2d 1311 (1986).

"However, there is something rather offensive in allowing an investigating officer to testify not simply that a certain pattern of conduct is often found in narcotics cases, leaving it for the jury to determine whether the defendant's conduct fits the pattern, but also that such conduct fitted that pattern, at least when other inferences could have been drawn not unreasonably although perhaps not as reasonably as that to which the expert testified." *United States* v. *Brown,* 776 F.2d 397, 401 (2d Cir. 1985), cert. denied, 475 U.S. 1141, 106 S. Ct. 1793, 90 L. Ed. 2d 339 (1986). Nevertheless, the court in *United States* v. *Brown,* supra, concluded that a police officer, who qualified as an expert, could give opinion testimony indicating that the defendant had acted as a "steerer" in a drug sale.

"Under Fed. R. Evid. 702, expert testimony is admissible if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' The subject of the expert testimony here, i.e., the clandestine manner in which drugs are bought and sold, is unlikely to be within the knowledge of the average layman. *United States* v. *Johnson,* 575 F.2d 1347, 1361 (5th Cir. 1978), cert. denied, 440 U.S. 907, 99 S. Ct. 1214, 59 L. Ed. 2d 454 (1979)." *United States* v. *Carson,* 702 F.2d 351, 369 (2d Cir.), cert. denied sub nom. *Mont* v. *United States,* 462 U.S. 1108, 103 S. Ct. 2465, 77 L. Ed. 2d

1335 (1983). We believe that a trial court should have broad discretion in the matter of the admission of expert testimony concerning the sale of illicit drugs. Id., 369–70. Expert witnesses may testify that certain behavior by a defendant or his possession of particular items is conduct similar to that engaged in by the typical drug dealer. *United States* v. *Brown,* supra, 400–402. A police officer, who is qualified as an expert witness, may even testify that, in light of the officer's personal observations of his conduct, it appeared that a defendant was engaged in narcotics sales. *United States* v. *Young,* 745 F.2d 733, 760–61 (2d Cir. 1984), cert. denied sub nom. *Myers* v. *United States,* 470 U.S. 1084, 105 S. Ct. 1842, 85 L. Ed. 2d 142 (1985); *United States* v. *Carson,* supra, 369–70.

We hold, however, that the state may not ask an expert witness whether in his expert opinion a defendant possessed illegal drugs for sale or consumption. We note that it would have been entirely proper for the state's attorney to have asked Lengyel whether in his expert opinion drug sellers usually work with the items found and seized in the defendant's apartment, or whether it would be unusual to discover these items in the apartment of someone who did not sell drugs. *State* v. *Girolamo,* 197 Conn. 201, 213, 496 A.2d 948 (1985); *State* v. *Williams,* supra; *State* v. *Grayton,* supra.

## II

The Appellate Court determined that the trial court's error in admitting Lengyel's testimony, as well as that of Honis, was of constitutional significance "because this claim implicates the defendant's constitutional right to a fair trial . . . ." *State* v. *Vilalastra,* supra, 681. Accordingly, it placed the burden on the state to prove that this error was harmless beyond a reasonable doubt and also held that the state had failed to meet this burden.

We conclude that the Appellate Court erred in determining that this error was of constitutional significance. The opinion does not explain why the erroneous admission of a portion of Lengyel's testimony deprived the defendant of his constitutional right to a fair trial, nor does it rest its conclusion upon any provision of the United States or the Connecticut constitution. *State* v. *Vilalastra,* supra, 680–82. The Appellate Court cited only one case to support its conclusion that the error was of constitutional magnitude. *State* v. *Cohane,* 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). In *State* v. *Cohane,* supra, however, we held that a defendant has a right under the fifth amendment to the United States constitution, upon proper request, to an instruction that the jury not draw inferences of guilt from the exercise of his right not to testify, and that the state has the burden of proving that the failure to give such an instruction is harmless beyond a reasonable doubt. The facts and issues in the case at bar are significantly different from those in *State* v. *Cohane,* supra.

The Appellate Court "has put a constitutional tag on a nonconstitutional evidentiary ruling." *State* v. *Douglas,* 203 Conn. 445, 455, 525 A.2d 101 (1987); accord *State* v. *Mullings,* 202 Conn. 1, 15, 519 A.2d 58 (1987); *State* v. *McIntosh,* 199 Conn. 155, 162, 506 A.2d 104 (1986); *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982). "Generally, 'the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved.' *State* v. *Periere,* [186 Conn. 599, 611, 442 A.2d 1345 (1982)], quoting *United States ex rel. Bibbs* v. *Twomey,* 506 F.2d 1220, 1222 (7th Cir. 1974)." *State* v. *Talton,* 197 Conn. 280, 289–90, 497 A.2d 35 (1985). The defendant has failed to cite a single case from any jurisdiction in which

a court has held that the erroneous admission of expert testimony concerning an ultimate fact implicates fundamental fairness or constitutes the violation of a specific constitutional right. Courts in other jurisdictions have not attached constitutional significance to this type of evidentiary error. *United States* v. *Brown,* supra; *United States* v. *Young,* supra; *United States* v. *Carson,* supra; *State* v. *Carreon,* supra; *Hinnant* v. *United States,* supra; *Commonwealth* v. *Johnson,* supra.

"When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The defendant must show that it is more probable than not that the erroneous action of the court affected the result. Id.; *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976)." *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988).

There was considerable evidence indicating that the defendant possessed the cocaine with the intent to sell. Dr. Charles Reading, a toxicologist, testified that the eight packets of cocaine found in the defendant's bedroom contained about nine-tenths of an ounce or twenty-six grams of cocaine, and that this cocaine was 83 percent pure. The police also seized, pursuant to the search warrant, a tin foil packet from the defendant's pocket. Reading testified that this packet contained two-tenths of a gram of cocaine, and that this cocaine was 28 percent pure. The state's attorney asked Reading how many packets of similar nature to the one found in the defendant's pocket could be prepared from the cocaine found in the bedroom. Reading responded that 130 bags could be filled. Honis testified that "cocaine that is 83 percent [pure] would be cut down, would be cut with say some lactose, to be knocked down to a lesser purity." He testified in addition that cocaine

commonly seized on the street "runs three, five or eight percent purity." The state introduced into evidence as exhibits three items found and seized, pursuant to the search warrant, in the defendant's apartment: a grinder, a bottle of lactose, and a small spoon. Lengyel properly testified that these items could be used by a drug seller to cut high purity cocaine for street sale. *State* v. *Girolamo,* supra; *State* v. *Williams,* supra; *State* v. *Grayton,* supra. There was an abundance of evidence from which a jury could reasonably conclude that the defendant was guilty of the charge of possession of cocaine with the intent to sell. In view of this strong evidence, we conclude that the defendant has not shown that the erroneous admission of a single question and answer probably affected the result of the trial.

We reverse the judgment of the Appellate Court and remand the case to the Appellate Court with direction to reinstate the judgment of the trial court.

In this opinion the other justices concurred.